**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| BODINE ELECTRIC COMPANY, ) | |
| ) | **Case No.: 09-cv-3055** |
| Plaintiff, ) | |
| ) | The Honorable William J. Hibbler |
| v. ) | United States District Judge |
| ) | |
| VIKING ACCESS SYSTEMS, LLC, ) | The Honorable Susan E. Cox |
| ) | United States Magistrate Judge |
| Defendant ) | |
| ) | |

**RESPONSE TO MOTION TO DISMISS OR TRANSFER VENUE**

Plaintiff, BODINE ELECTRIC COMPANY ("Bodine"), by its attorneys, Marcos Reilly and Stephen D. Vernon, files this Response to Defendant, VIKING ACCESS SYSTEMS, LLC's ("Viking") Motion to Dismiss Pursuant to Fed. R. Civ. Pro. 12(b)(2)-(3) or, in the alternative, to Transfer Venue to Central District of California[1] pursuant to 28 U.S.C. §1404 ("Viking's Motion") and Brief in Support thereof ("Viking's Brief"). For its Response, Bodine states as follows:

**INTRODUCTION**

Bodine and Viking have had a commercial relationship for over five (5) years. Each purchase Viking made from Bodine was subject to Bodine's standard terms and conditions ("Bodine's Terms"), which were sent as a form. These Terms contained a forum-selection clause designating "courts located in Cook County, within the State of Illinois" as the exclusive site of any lawsuit. In 2008, Viking entered into three separate signed "Zero-Lead-Time Agreements" or "ZLT Agreements" with Bodine. Each of the ZLT Agreements specifically stated that the Agreement was subject to Bodine's Terms, including, of course, the forum selection clause. Despite its prior receipt of Bodine's Terms and the explicit reference to the

---

[1] Viking's Motion repeatedly requests that the Court transfer this matter to the Southern District of California. Viking's Motion (DE #14) at pp. 1-3. However, Viking's Brief requests that the case be transferred to the Central District of California. Viking's Memo (DE #16) at pp. 13 and 15. The repeated reference in Viking's Motion to the Southern District of California appears erroneous because Viking is located in Irvine, California, which is located in the Central District of California. Since Viking's Brief does not assert that there is any basis for venue in the Southern District of California, Bodine will address Viking's request to transfer venue as being directed only to the Central District of California.

Terms in the ZLT Agreements, Viking claims that the forum-selection clause should not be enforced because Viking did not know it was contained in the Terms. For the reasons more fully explained below, this Court should not accept Viking's apparent willful ignorance of the terms of the parties' contracts. Viking's Motion should be denied.

## FACTUAL BACKGROUND

Bodine is an Illinois corporation and its corporate headquarters are in Chicago, Illinois. Jeff Stahl Declaration ("Stahl Decl.") at ¶2. Bodine is a leading manufacturer of fractional horsepower gearmotors, motors and motor speed controls in North America. *Id.* at ¶3. Known for their reliability, long life and competitive prices, Bodine gearmotors are found in many demanding industrial and commercial applications. *Id.* at ¶4. Bodine offers over 1,000 standard products, and thousands of custom designed items [*Id.* at ¶5], which are available via an extensive distributor network, and are also sold directly. *Id.* at ¶8.

The development of a custom gearmotor requires a significant investment of Bodine's time and resources to understand the customer's requirements and to engineer a solution. *Id.* at ¶6. Bodine's engineering group maintains a "Project Log" wherein it records the number of hours it invests in the design of custom gearmotors for each client. *Id.* at ¶7. These product are not simply pulled out of a bin and shipped.

Bodine's customers enter into purchase contracts with Bodine by sending purchase orders ("POs") to Bodine either directly or through an independent sales representative who is not an employee of Bodine. *Id.* at ¶9. Generally, the POs are preceded by considerable communication about the customer's needs and the appropriate Bodine products to fill those needs. Bodine receives POs from its customers and independent sales representatives in its Chicago, Illinois headquarters. *Id.* at ¶10. Bodine's management – located in Chicago, Illinois headquarters - reviews each PO, determines whether or not to fill each PO and, if appropriate, directs that the PO be filled and that an invoice for the PO be issued to the customer. *Id.* at ¶11. Bodine's management makes all decisions regarding the price of its products. *Id.* at ¶12.

Each invoice issued by Bodine expressly states that it is conditioned on acceptance of Bodine's standard Terms and Conditions of Sale ("Terms") [*Id.* at ¶13 (citing Exhibit 1 thereto (the Terms) at ¶16)] and the Terms are printed on the reverse side of every invoice. *Id.* at ¶14. Bodine's Terms are its only document called "terms and conditions." *Id.* Bodine's Terms are also

located on its website at: http://www.bodine-electric.com/Asp/AboutTermsOfSale.asp. *Id.* at ¶15.

Viking Access Systems, LLC ("Viking") has been a Bodine customer since 2004. *Id.* at ¶17. Viking's initial contact with Bodine was through Chris Miller - an independent sales representative and not an employee of Bodine. *Id.* at ¶18. Mr. Miller forwarded all POs received from Viking to Bodine's Chicago, Illinois headquarters for review and approval. *Id.* at ¶19. All invoices issued by Bodine in response to a Viking PO contained Bodine's Terms printed on the reverse side.[2] *Id.* at ¶25. Each of the invoices indicated that it came from Bodine's corporate headquarters in Chicago, Illinois as visible from the address, telephone and facsimile information (2500 West Bradley Place, Chicago, Illinois 60618, PH 773-478-3515, FAX 773-478-3232) contained on those invoices. *Id.* at ¶28 (citing Group Exhibit 2).

Since 2004, Bodine has invested significant amounts in its relationship with Viking by developing and manufacturing custom gearmotors for Viking's specific applications. *Id.* at ¶20. Bodine has developed 10 custom gearmotor specifications (60400010, 60400350, 60500900, 60500930, 60501050, 60600290, 60600420, 60700330, 60700650, 60800110) for Viking's use. *Id.* at ¶21. The Project Log maintained by Bodine's engineering group shows it has spent 531 hours designing to Viking's specifications. *Id.* at ¶22. The initial design and any subsequent design modification of Bodine's custom grearmotors for Viking, occurred in Bodine's Chicago, Illinois headquarters. *Id.* at ¶23. From 2004 until mid to late 2008, a substantial portion of the manufacturing of any gearmotors ordered by Viking from Bodine occurred in Chicago, Illinois.[3] *Id.* at ¶24.

In October, November and December of 2008, Bodine received POs from Viking for Bodine custom gearmotors nos. 60500900, 60700650 and 60600290. *Id.* at ¶27. Bodine issued

---

[2] This includes Invoice No. 258358 dated November 25, 2005 ("Invoice No. 258358"), which is attached as Exhibit 3 to the Declaration of Hassan Taheri a.k.a. Steve Taheri ("Taheri Declaration"). *Id.* at ¶25. Exhibit 3 to the Taheri Declaration is not an accurate copy of Invoice No. 258358 because it does not show Bodine's Terms which are located on the reverse side of that Invoice. *Id.* at ¶26.

[3] From 2004 until the second and third quarters of 2008, a substantial portion of Bodine's manufacturing occurred in Chicago, Illinois. *Id.* at ¶16. During the second and third quarters of 2008, Bodine transitioned its manufacturing operations from Chicago, Illinois to Peosta, Iowa. *Id.* Despite this transition, Bodine's headquarters remained in Chicago, Illinois. *Id.*

invoices to Viking for those particular orders (the "Non-ZLT Invoices"), which were outside the scope of the ZLT Agreements. *Id.* (citing Group Ex. 2). Each of the Non-ZLT Invoices, like every Bodine invoice, stated that the sale was conditioned on acceptance of Bodine's Terms [*Id.* at ¶27 (citing Group Ex. 2 at ¶16)] and indicated that it came from Bodine's corporate headquarters in Chicago, Illinois. *Id.* at ¶28 (citing Group Ex. 2).

In 2008, to better meet its customers' flexible delivery requirements, Bodine developed its Zero-Lead-Time ("ZLT") Program. *Id.* at ¶29. The ZLT Program gives Bodine's customers the ability to quickly adjust production to meet changes in demand and reduces costs by minimizing work-in-process inventory. *Id.* at ¶30. In order to participate in the ZLT Program, a Bodine customer must execute ZLT Agreement with Bodine. *Id.* at ¶31.

Viking chose to participate in the ZLT Program as to Bodine custom gearmotors nos. 60400350, 60501050, 60400010 by executing a separate ZLT Agreement with Bodine for each of these custom gearmotors. *Id.* at ¶32 (citing Group Ex. 3). Each of these ZLT Agreements was signed by Bodine's Manager of Sales/Service Operations, Miguel Rivera, and Viking's Steve Taheri. *Id.* at ¶34 (citing Group Ex. 3). Mr. Rivera works at Bodine's corporate headquarters here in Chicago. *Id.* at ¶35. Each of the ZLT Agreements between Bodine and Viking contained the address, telephone and facsimile information for Bodine's corporate headquarters in Chicago, Illinois. *Id.* at ¶36 (citing Group Ex. 3). In addition, the prefix for Bodine telephone and fax numbers listed on the ZLT Agreements and used by Viking is "773." *Id.* at ¶37 (citing Group Ex. 3).

By signing the ZLT Agreements, Viking issued a one-year "blanket purchase order" for each custom gearmotor identified in them. *Id.* at ¶¶33 and 38 (citing Group Ex. 3). For the rest of 2008 and on into 2009, in reliance on the "blanket purchase orders," Bodine shipped many gearmotors to Viking and issued invoices for them. *Id.* at ¶39 (citing Group Ex. 4). The invoices were all Bodine's standard form with the Terms incorporated by reference in the ZLT Agreements printed on the back. *Id.* at ¶40 (citing Group Ex. 4).

Viking never indicated any disagreement with any part of Bodine's Terms, and made no specific objection to the choice of forum provision. Despite receiving the shipments and accepting the products along with specific invoices governed by the Terms, Viking has failed to pay. *Id.* at ¶41. Bodine's repeated requests for payment were met mostly with silence. As of

4

March 31, 2009, Bodine loss as a result of Viking's breach exceeds $300,000. *Id.* at ¶¶41-46. Thus, the financial impact of Viking's breach felt by Bodine in Chicago, Illinois is considerable.

## ARGUMENT

I.   **APPLICABLE LAW.**

Viking makes the assertion that California law applies to this matter. Viking Brief (DE #16) at p. 11. However, Viking repeatedly cites Illinois law in support of its contention that the Bodine's Terms were not incorporated into the ZLT Agreements and elsewhere in its briefing. *Id.* at pp. 7-11.[4] Federal courts sitting in diversity apply the choice-of-law rules of the forum state to determine the applicable substantive law. *Hinc v. Lime-O-Sol Co.,* 382 F.3d 716, 719-720 (7th Cir. 2004). Under Illinois law, a choice-of-law determination is required only when a difference in law will make a difference in the outcome. *Townsend v. Sears, Roebuck and Co.,* 227 Ill.2d 147, 155, 879 N.E.2d 893, 898, 316 Ill.Dec. 505, 510 (2007).

Viking's Brief raise issues of contract formation, disputing which terms are part of the contracts created by the Non-ZLT Invoices (the "Non-ZLT Contracts") and the ZLT Agreements. Viking Brief (DE #16) at pp. 7-11. The most important disputed term for present purposes is of course the forum selection clause. For the Non-ZLT Contracts, Section 2-207 of the Uniform Commercial Code ("UCC") governs. Both California and Illinois have adopted the UCC, and both States' versions of 2-207 are identical. *Compare* West's Ann. Cal.Com.Code § 2207 with 810 ILCS 5/2-207.[5] With respect to whether Bodine's Terms are part of the ZLT Agreements, the Terms were effectively incorporated into the ZLT Agreements by reference under California or Illinois law.[6]

---

[4]   The contradiction in Viking's briefing appears either to be an implicit recognition that the Illinois choice of law provision contained in Bodine's Terms governs the parties relationship or an intentional attempt to avoid California law which is even less favorable to Viking than Illinois law. Either way, Viking's arguments that Bodine's Terms are a part of the parties contracts.

[5]   Copies of each cited authority found only on electronic databases such as Westlaw and Lexis or not reported in the West National Reporter System are attached at Exhibit A. A copy of each California case cited by Bodine will be provided separately to chambers with Bodine's courtesy copy of its Response.

[6]   Once the Court determines that the Terms were a part of the Non-ZLT Invoices and the ZLT Agreements, then it should apply Illinois law to its subsequent analysis regarding the reasonableness of the forum selection clause. *See Kaufman v. American Exp. Travel Related Services Co., Inc.,* 2008 WL

II.  **THE FORUM-SELECTION CLAUSE FIXING VENUE IN COOK COUNTY, ILLINOIS IS VALID AND ENFORCEABLE.**

Federal Rule of Civil Procedure 12(b)(3) provides that a party may move to dismiss based on improper venue. Fed.R.Civ.P. 12(b)(3). Bodine has the burden of establishing that venue is proper. *Hanyuan Dong v. Garcia,* 553 F.Supp.2d 962, 964 (N.D.Ill. 2008). In ruling on a motion to dismiss for improper venue, the Court may examine facts outside the complaint, takes all the allegations in the complaint as true, and draws all reasonable inferences in favor of plaintiff (Bodine). *Id.*

    A.    <u>**Bodine's Terms Were Incorporated Into The ZLT Agreements.**</u>

    1.    **Section 2-207 Does Not Apply to the ZLT Agreements Because Bodine's Terms Were Not "Additional Terms."**

Viking claims that Bodine's Terms, including the forum-selection clause, were not part of the ZLT Agreements because the Terms constituted "additional material terms" under 2-207. This argument is based on a false premise. Section 2-207 is entitled "Additional Terms in <u>Acceptance or Confirmation.</u>" (Emphasis added). Its provisions only apply to additional terms contained in "expression of acceptance or a written confirmation[.]" 810 ILCS 5/2-207(1) and West's Ann.Cal.Com.Code § 2207(1). The ZLT Agreements, which include Bodine's Terms, were the initial offer from Bodine. Viking accepted that offer by signing the ZLT Agreements and filling in the blanket purchase order information. Section 2-207 does not apply; there is no "battle of the forms," just a run-of-the-mill contract.

---

687224, 3-4 (N.D.Ill. 2008) ("The law is clear that, *where a valid contract has been formed,* a court should enforce the choice of law provision contained within that contract unless it violates the forum state's public policy and the forum state has a materially greater interest in the litigation than the chosen state."). However, even if the Court applied California law to that analysis, the forum selection clause is enforceable. *See Intershop Communications v. Superior Court,* 104 Cal.App.4th 191, 199-200 (2002) ("Neither inconvenience nor the additional expense of litigating in the selected forum are factors to be considered.")

6

### 2. Bodine's Terms were incorporated into the ZLT Agreements.

Viking claims that just because Taheri says Bodine never specifically told him orally that the ZLT Agreements were subject to its Terms, Viking should not be bound by the Terms. Viking Brief (DE #16) at pp. 3 and 9. But again, Viking's position is based on a misapprehension of contract law. A party to a contract has no duty to explain or draw attention to its particular terms. *Brookwood v. Bank of America,* 45 Cal.App.4th 1667, 1674 (1996). That's the point of a written contract. Unless it's ambiguous, when you sign it you're legally presumed to understand and agree. Taheri's signature on the ZLT Agreements conclusively manifested an intent on behalf of Viking to consent to all their provisions, including the forum selection clause.[7] Taheri's tardy in-court declaration that he did not intend to agree to be bound by the Terms is meaningless. He never told Bodine that. "[I]t is elementary that the uncommunicated subjective belief of a contracting party is not competent evidence to prove the meaning of the contract." *Stewart Title Co. v. Herbert,* 6 Cal.App.3d 957, 964 (1970). The *objective* manifestation of Taheri's intent prevails over his undisclosed *subjective* intent. *Security Pac. Nat. Bank v. Matek,* 175 Cal.App.3d 1071, 1075 (1985).

Further, under California law (and Illinois law too), a contract may include provisions that are not physically a part of the document so long as they are incorporated by reference. *Wolschlager v. Fidelity National Title Ins. Co.*, 111 Cal.App.4th 784, 790. (2003). Incorporation by reference requires that (1) the reference to another document was clear and unequivocal; (2) the reference was called to the attention of the other party, who consented to that term; and (3) the terms of the incorporated documents were known or easily available to the contracting parties. *Id.* "The contract need not recite that it 'incorporates' another document, so long as it 'guide[s] the reader to the incorporated document.' [Citations.]" *Shaw v. Regents of University*

---

7  A party to a contract is charged with knowing the terms of an agreement, even if he or she does not read it. *Markborough California, Inc. v. Superior Court,* 227 Cal.App.3d 705, 716 (1991). A party who signs a contract "cannot complain of unfamiliarity with the language of the instrument." *Madden v. Kaiser Foundation Hospitals*, 17 Cal.3d 699, 710 (1976). "[W]hen a person with the capacity of reading and understanding an instrument signs it, he is, in the absence of fraud and imposition, bound by its contents and estopped from saying that its provisions are contrary to his intentions or understanding." *Jefferson v. Department of Youth Authority*, 28 Cal.4th 299, 303 (2002).

*of California* 58 Cal.App.4th 44, 54 (1997) (*comparing Baker v. Aubry,* 216 Cal.App.3d 1259, 1264 (1989), with *Chan v. Drexel Burnham Lambert, Inc.* 178 Cal.App.3d 632, 643 (1986)).

In the present case, Bodine's Terms are clearly and unequivocally incorporated by reference in the ZLT Agreements by the statement that "[t]his order would be subject to our standard terms and conditions with the following exceptions:" *See* Group Ex. 3 to Stahl Decl. The ZLT Agreements then continue on to list several differences in the terms between the ZLT Agreements and Bodine's Terms. *Id.* Thus, in reading the ZLT Agreements, Viking's attention was not only drawn to the fact that by agreeing place the blanket orders contemplated in the ZLT Agreements that Viking was agreeing to Bodine's Terms but that the ZLT Agreements contained some exceptions to Bodine's Terms. Finally, Bodine's Terms were readily available at any time for Viking to review on Bodine's website or at Viking's request.[8] *Id.* at ¶¶14-15. Because the only admissible evidence establishes that the Terms were available for review, they are binding on Viking. *See Slaught v. Bencomo Roofing Co.,* 25 Cal.App.4th 744, 748-750 (1994) (arbitration clause in prime contract referenced in subcontract binding on subcontractors as subcontractors had duty to go to contractor's office to examine prime contract).[9]

**B.     Bodine's Terms Were A Part of The Non-ZLT Contracts Under Section 2-207of the UCC.**

Section 2-207 of the UCC provides:

> (1) A definite and seasonable expression of acceptance or a written confirmation which is sent within a reasonable time operates as an acceptance even though it states terms additional to or different from those offered or agreed upon, unless acceptance is expressly made conditional on assent to the additional or different terms.

810 ILCS 5/2-207(1); West's Ann.Cal.Com.Code § 2207(1). (Emphasis Added.)

---

[8]     Taheri claims that he had not received a copy of the Terms prior to July 18, 2008 when he executed the ZLT Agreements. This claim is besides the point. The law only requires that the document incorporated by reference be readily available. *Kleveland v. Chicago Title Ins. Co.*, 141 Cal.App.4th 761, 765 (2006). Moreover, even if the law required that Bodine's Terms be previously provided to Viking, they were. *Id.* at ¶¶13 and 27 (citing Group Ex. 2 and 4). The Terms were located on the reverse side of every invoice issued since the inception of Bodine's relationship with Viking in 2004. *Id.*

[9]     Illinois law is substantially the same as California law, and under Illinois law the Terms were also effectively incorporated. *See*, e.g., *Kirschenbaum v. Northwestern Univ.*, 312 Ill.App.3d 1017, 728 N.E.2d 752, 762 (2000); *International Star Registry of Illinois v. Omnipoint Marketing, LLC*, 2006 WL 2598056, 3 (N.D.Ill. 2006).

Bodine's Terms have been located on the reverse side of every invoice issued to Viking since 2004. Each of Bodine's invoices, including the Non-ZLT Invoices, is expressly conditioned on acceptance of Bodine's standard Terms. Until the present lawsuit, Viking accepted the Non-ZLT Invoices, including the Terms, without objection or otherwise rejecting the Terms. This includes making payment on all invoices issued by Bodine prior to those at issue in this case. Thus, the Terms became part of the parties' contract.

### C. The Forum-Selection Clause Is Reasonable.

A forum selection clause in a contract is *prima facie* valid and should be enforced unless the opposing party shows that enforcement would be unreasonable under the circumstances. *Calanca v. D & S Manufacturing Co.*, 157 Ill.App.3d 85, 87, 510 N.E.2d 21, 23, 109 Ill.Dec. 400, 402 (1st Dist. Dist. 1987) (*citing The Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 10 (1972)). "[I]n order to hold a forum selection clause unenforceable, enforcement must contravene the strong public policy of the forum or the chosen forum must be ' seriously inconvenient for the trial of the action.' " (Emphasis in original.) *Calanca,* 157 Ill.App.3d at 88, 510 N.E.2d 21, 23, 109 Ill.Dec. 400, 402 (quoting *The Bremen*, 407 U.S. at 16). To determine the reasonableness of a forum selection clause, courts should consider: (1) the law that governs the formation and construction of the contract; (2) the residency of the parties; (3) the place of execution and/or performance of the contract; (4) the location of the parties and their witnesses; (5) the inconvenience to the parties of any particular location; and (6) whether the clause was equally bargained for. *Dace Intern., Inc. v. Apple Computer, Inc.* 275 Ill.App.3d 234, 238, 655 N.E.2d 974, 977, 211 Ill.Dec. 591, 594 (1st Dist. 1995) (citing *Calanca,* 157 Ill.App.3d at 89, 109 Ill.Dec. 400, 510 N.E.2d 21.)

Here, the first factor favors Bodine, because the Terms provide that the law governing the agreement is Illinois. The second factor is a draw because Bodine is a citizen of Illinois and Viking is a citizen of California.

The third factor favors Bodine. While Viking accepted Bodine's invoices for the Non-ZLT Contracts and executed the ZLT Agreements in California, the heart of the parties' contracts was Bodine's performance – i.e. Bodine's design and manufacture of gearmotors for Viking. This design occurred in Chicago, Illinois and, until mid to late 2008, a substantial portion of Bodine's manufacturing occurred in Chicago, Illinois as well. The design of the

9

Bodine motors for Viking were revised and perfected in Illinois. Thus, a substantial portion of the performance of the Non-ZLT Contracts and the ZLT Agreements took place in Illinois.

The fourth factor also favors Bodine because the majority of its witnesses are located in Bodine's Chicago, Illinois headquarters where a substantial portion of the performance of the Non-ZLT Contracts and ZLT Agreements occurred. While Viking contends that its witnesses are in California, it does not establish that this testimony could not be obtained voluntarily in the case of its employees or through the use of depositions at trial.

Regarding the fifth factor, although litigation in its home state would clearly be more convenient for Viking, mere inconvenience does not provide a basis for voiding a forum selection clause. *Dace International, Inc.,* 275 Ill.App.3d at 239, 655 N.E.2d at 977-978, 211 Ill.Dec. at 594. Viking does not establish that litigating in Illinois would be so serious a hardship that it would have to abandon its defense. *See id.*

Finally, the sixth factor does <u>not</u> favor Viking. Viking hints at the fact that its bargaining power was so inferior to Bodine's that it would be unreasonable to enforce the clause against it. While Viking contends that the forum-selection clause was boilerplate language and that the parties did not engage in any negotiation over those terms, nevertheless, the fact that Viking did not object to or attempt to negotiate the clause is no reason to invalidate it. Viking is a business entity, as opposed to ordinary consumers, and Viking was not in need of protection when contracting for business services. *IFC Credit Corp. v. Rieker Shoe Corp.,* 378 Ill.App.3d 77, 86, 881 N.E.2d 382, 389, 317 Ill.Dec. 214, 221 (1st Dist. 2007). Thus, Viking has not met its burden to show that forum-selection clause is unreasonable.

## II. ANYWAY, VIKING IS SUBJECT TO SPECIFIC PERSONAL JURISDICTION IN ILLINOIS AND VIKING'S MOTION TO TRANSFER VENUE SHOULD BE DENIED.

Federal Rule of Civil Procedure Rule 12(b)(2) provides for dismissal where the Court lacks personal jurisdiction over a party. The plaintiff bears the burden of demonstrating the existence of jurisdiction. *Purdue Research Found. v. Sanofi-Synthelabo, S.A.,* 338 F.3d 773, 782 (7th Cir. 2003). Although a plaintiff need not anticipate a personal jurisdiction challenge in its complaint, once the defendant moves to dismiss the complaint for lack of personal jurisdiction, the plaintiff must demonstrate a *prima facie* case of jurisdiction. *Id.* In determining whether a *prima facie* case has been established, the Court can consider materials such as affidavits, and

6494455V1 898458 34610

"the plaintiff is entitled to the resolution in its favor of all disputes concerning relevant facts presented in the record." *Id.*

    A.    **<u>Viking is Subject to Specific Personal Jurisdiction in Illinois.</u>**

In a case based upon diversity of citizenship, a federal court sitting in Illinois may exercise personal jurisdiction over a nonresident defendant only to the extent that an Illinois court could do so. *Preussag Intern. Steel Corp. v. Ideal Steel and Builders' Supplies, Inc*. 2004 WL 783102, 2-4 (N.D.Ill. 2004). Under Illinois law, the court must determine that the exercise of such jurisdiction complies with the Illinois long-arm statute, the Illinois state constitution, and federal due process in order to exercise personal jurisdiction over a nonresident party. *Id.* The Illinois long-arm statute permits the exercise of jurisdiction by an Illinois court on any basis permitted by the state or federal constitution. 735 Ill. Comp. Stat. 5/2-209(c). The analysis is collapsed into a two-part inquiry based on the Illinois Constitution and federal constitutional law. *Preussag Intern. Steel Corp.*, 2004 WL 783102 at 2-4.

Under the Illinois Constitution, a court may exercise personal jurisdiction "only when it is fair, just, and reasonable to require a nonresident defendant to defend an action in Illinois, considering the quality and nature of the defendant's acts which occur in Illinois or which affect interests located in Illinois." *Rollins v. Ellwood,* 141 Ill.2d 244, 275, 152 Ill.Dec. 384, 565 N.E.2d 1302 (1990). Illinois courts have upheld personal jurisdiction under the Illinois Constitution "over a non-resident corporate purchaser engaged in a commercial relationship with an Illinois corporation through the placing of purchase orders to the plaintiff in Illinois for products manufactured in Illinois." *RAR, Inc. v. Turner Diesel, Ltd.,* 107 F.3d 1272, 1276 (7th Cir.1997) (quoting *Autotech Controls Corp. v. K.J. Elec. Corp.,* 256 Ill.App.3d 721, 727, 195 Ill.Dec. 526, 628 N.E.2d 990 (1993)); *see also G.M. Signs, Inc. v. Kirn Signs, Inc.,* 231 Ill.App.3d 339, 343, 172 Ill.Dec. 933, 596 N.E.2d 212 (1992) (finding personal jurisdiction existed over an active nonresident purchaser who initiated and negotiated an ongoing commercial relationship with an Illinois seller).

In the present case, Bodine and Viking had an involved commercial relationship spanning over 5 years. Stahl Decl. at ¶17. That relationship involved the coordination of intricate design and manufacturing specifications and numerous contracts *Id.* at ¶¶17-41. Based on this established relationship, Viking issued POs for Bodine custom gearmotors nos. 60500900, 60700650 and 60600290 in October through December of 2008. Viking knew that those POs

6494455V1 898458 34610

would be received by Bodine's headquarters in Chicago, Illinois. *Id.* at ¶27. Each of the Non-ZLT Invoices issued by Bodine to Viking bore the address for Bodine's Chicago, Illinois headquarters and directed payment to be made to that address. *Id.* at ¶28 (citing Group Ex. 2).

After four years as a Bodine customer, Viking also chose to participate in the ZLT Program by executing three separate ZLT Agreement with Bodine. *Id.* at ¶32 (citing Group Ex. 3). Each of these ZLT Agreements was signed by an Illinois resident when it was received by Viking. (Bodine's Manager of Sales/Service Operations, Miguel Rivera) *Id.* at ¶34 (citing Group Ex. 3). Each of the ZLT Agreements contained the address, telephone and facsimile information for Bodine's corporate headquarters in Chicago, Illinois. *Id.* at ¶36 (citing Group Ex. 3). In addition, the prefix for Bodine telephone and fax numbers listed on the ZLT Agreements and used by Viking is "773." *Id.* at ¶37 (citing Group Ex. 3). By signing the ZLT Agreements, Viking issued a one-year "blanket purchase order" for each custom gearmotor identified in the ZLT Agreements. *Id.* at ¶¶33 and 38 (citing Group Ex. 3). Bodine's Chicago Illinois headquarters relied on the ZLT Agreements and its prior history with Viking during the rest of 2008 and on into 2009 when it shipped its products to Viking. *Id.* at ¶39 (citing Group Ex. 4). Viking's non-payment for those products has caused damage to Bodine financially in Illinois. *Id.* at ¶¶41-46.

To satisfy federal due process requirements, a nonresident defendant must have sufficient minimum contacts with the forum state so that the exercise of jurisdiction does not offend "traditional notions of fair play and substantial justice." *International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95, 102 (1945). In addition, federal due process requires that the action arise out of the defendant's contacts with the forum state and that it be reasonable to require the defendant to litigate in the *forum state. Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 472-77, 105 S.Ct. 2174, 2181-85, 85 L.Ed.2d 528, 540-44 (1985). Although contracting with an in-state party is alone not enough to establish minimum contacts, " 'prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing' must indicate the purposeful availment that makes litigating in the forum state foreseeable to the defendant." *Id.* (quoting *Burger King,* 471 U.S. at 479).

Here, Bodine asserts that the exercise of specific jurisdiction over Viking is proper. While Viking contends that it has no contacts with Illinois, it sent POs for gearmotors to Bodine

and entered into the ZLT Agreements with Bodine knowing that it was located in Chicago, Illinois and that a substantial portion of the design and manufacture of Bodine's products would occur in Illinois. Payment was also ultimately received by Bodine in Illinois. For these reasons and for those discussed above, Vikings contacts cannot be characterized as random, attenuated or fortuitous. It was thus foreseeable that Viking could be haled into Illinois court. *See Burger King,* 471 U.S. at 475. Given these interactions, Viking has established minimum contacts with Illinois sufficient to satisfy federal due process concerns. Thus, Viking's motion to dismiss for lack of personal jurisdiction should be denied.

### B. Viking's Request To Transfer Should Also Be Denied.

In the event that this Court does not dismiss this case, Viking requests this Court transfer jurisdiction of this case to the Central District of California. A district court may transfer a civil action "[f]or the convenience of parties and witnesses [and] in the interest of justice ... to any other district or division where it might have been brought." 28 U.S.C. § 1404(a); *Amoco Oil Co. v. Mobil Oil Corp.*, 90 F.Supp.2d 958, 959-962 (N.D.Ill. 2000). Transfer is appropriate where: (1) venue is proper in the transferor district; (2) venue and jurisdiction are proper in the transferee district; and (3) the transfer will serve the convenience of the parties and the witnesses and will promote the interest of justice. *Id.* The third element requires that the transferee court "clearly [be] more convenient" than the transferor court. *Id.* As fully explained below, Viking's request for a Section 1404(a) transfer fails to satisfy this third important element.

#### 1. The convenience of the parties and the witnesses weighs against transfer.

When evaluating whether the transfer will serve the convenience of the parties and the witnesses, courts generally consider five factors: (1) the plaintiff's choice of forum, (2) the situs of the material events, (3) the relative ease of access to sources of proof, (4) the convenience of the parties, and (5) the convenience of the witnesses. *North Shore Gas Co. v. Salomon, Inc.,* 896 F.Supp. 786, 791 (N.D.Ill.1995); *College Craft Cos. Ltd. v. Perry*, 889 F.Supp. 1052, 1054 (N.D.Ill.1995).

First, the plaintiff's choice of forum is generally entitled to substantial weight, especially when it is plaintiff's home forum. *See Vandeveld v. Christoph,* 877 F.Supp. 1160, 1167 (N.D.Ill.1995). In this case, Illinois is both Bodine's chosen forum and its home forum. Moreover, Bodine's chosen forum has a significant connection to its claim, as the heart of the controversy involves gearmotors designed in Chicago, Illinois.

6494455V1 898458 34610

Second, Illinois is the situs of the majority of the material events in this case. Much of Bodine's performance under the parties' contracts took place in Illinois. Specifically, the design of the gearmotors at issue took place in Chicago, Illinois and, until mid to late 2008, a substantial portion of the manufacturing also took place in Chicago, Illinois. Thus, this factor weighs against transfer.

Third, most of the proof in this case will either come from Bodine's headquarters in Chicago, Illinois or its plant in Iowa. The Northern District of Illinois will have greater access to these important source of proof than the Central District of California. Accordingly, this factor also weighs against transfer.

Fourth, Bodine will experience great inconvenience if the litigation proceeds in the Central District of California. Bodine does not maintain an office in California and would be forced to transport its key witnesses and evidence from its Chicago, Illinois headquarters to California in the event of a trial. This factor also weighs against transfer.

Fifth, while Viking hints that their may be non-party witnesses that will be inconvenienced by having to travel to another forum to provide testimony in this action, Viking has not identified any specific witness that would be inconvenienced. Moreover, if such individuals do exist, their testimony can likely be obtained and preserved for trial via deposition. Thus, this factor also weighs against transfer.

**2. The interests of justice weigh <u>against</u> transfer.**

The court must also examine the interests of justice. *Amoco Oil Co.*, 90 F.Supp.2d at 959-962. This analysis "focuses on the efficient administration of the court system, rather than the private considerations of the litigants." *Id.* It includes such considerations as the speed at which the case will proceed to trial, the court's familiarity with the applicable law, the relation of the community to the occurrence at issue, and the desirability of resolving controversies in their locale. *Id.*

Initially, this matter will likely be proceed to resolution faster in the in the Northern District of Illinois. This case will likely be resolved at summary judgment and a trial will not likely be needed. The average time from filing until disposition in the Northern District of Illinois is 6.2 months whereas the time from filing until disposition is 7months in the Central District of California. http://www.uscourts.gov/cgi-bin/cmsd2008.pl (last visited on October 14, 2009). Moreover, the number of filings in the Central District of California in 2008 was almost

double the number of filings in the Northern District of Illinois in 2008 (15,144 in the Central District of California v. 8,591 in the Northern District of Illinois.) Transfer of this matter to the Central District of California would only further add to the Central District of California's judicial burden. Thus, this factor weighs in favor of retention.

Second, Bodine's Terms and Conditions contain an Illinois choice-of-law provision. A court sitting in the Northern District of Illinois is more familiar with substantive Illinois law than the Central District of California. Thus, this factor weighs against transfer.

Third, Bodine is an Illinois corporation with its headquarters in Illinois. Illinois has an interest in resolving this controversy involving non-payment to a domestic corporation. Thus, transfer is not appropriate based on this factor either.

        Respectfully submitted,

        BODINE ELECTRIC COMPANY


        By: s/*Stephen D. Vernon*
           One of the Attorneys for Plaintiff

Marcos Reilly
Stephen D. Vernon
Hinshaw & Culbertson LLP
222 N. LaSalle, Suite 300
Chicago, IL 60601
312-704-3000
312-704-3001
mreilly@hinshawlaw.com
svernon@hinshawlaw.com

6494455V1 898458 34610

**CERTIFICATE OF SERVICE**

The undersigned certifies and states that a true and correct copy of **its Response to Defendant, VIKING ACCESS SYSTEMS, LLC's Motion to Dismiss Pursuant to Fed. R. Civ. Pro. 12(b)(2)-(3) or, in the alternative, to Transfer Venue to Southern District of California pursuant to 28 U.S.C. §1404 and the Declaration of Jeff Stahl with Exhibits 1-4** was electronically filed using the Court's CM/ECF system and served upon counsel listed below via electronic transmission pursuant to the Court's CM/ECF system on October 14, 2009.
:

Christopher S. Naveja
Arnstein & Lehr LLP
120 South Riverside Plaza, Suite 1200
Chicago, Illinois 60606
Illinois Bar No. 6229936
csnaveja@arnstein.com

David V. Jafari
Karin C. Khan
Jafari Law Group, Inc.
801 N. Parkcenter Drive, Suite 220
Santa Ana, California 92705
djafari@jafarilawgroup.com
kkhan@jafarilawgroup.com


/s/ *Stephen D. Vernon*
Marcos Reilly
Stephen D. Vernon
Hinshaw & Culbertson LLP
222 N. LaSalle, Suite 300
Chicago, IL 60601
312-704-3000
312-704-3001
mreilly@hinshawlaw.com
svernon@hinshawlaw.com

6494455V1 898458 34610