### IN THE UNITED STATES DISTRICT COURT
### FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| BODINE ELECTRIC COMPANY, | ) | |
| | ) | **Case No. 09cv3055** |
| Plaintiff, | ) | |
| | ) | The Honorable William J. Hibbler |
| v. | ) | United States District Judge |
| | ) | |
| | ) | The Honorable Susan E. Cox |
| VIKING ACCESS SYSTEMS, LLC, | ) | United States Magistrate Judge |
| | ) | |
| Defendant. | ) | Complaint Filed: April 15, 2009 |
| | ) | |

### REPLY BRIEF IN FURTHER SUPPORT OF DEFENDANT VIKING ACCESS SYSTEMS, LLC'S MOTION TO DISMISS

Defendant Viking Access Systems, LLC ("Viking" or "Defendant") submits this Reply Brief ("Reply") in further support of Viking's Motion to Dismiss ("Motion") Plaintiff Bodine Electric Company's ("Bodine" or "Plaintiff") Complaint.

**INTRODUCTION**

Defendant submits its Motion on those arguments discussed in Defendant's Brief in Support of its Motion to Dismiss. In addition, Defendant submits this Reply in response to Plaintiff's argument that Bodine's Additional Terms of Sale were a part of the ZLT and Non-ZLT contracts under section 2-207 of the Uniform Commercial Code ("UCC").

**I.  Bodine's Additional Terms And Conditions Are Not Binding On Viking Under The So-Called "Knock-Out" Rule.**

Bodine argues in its Response Brief to Viking's Motion to Dismiss, as well as its Reply Brief to Viking's Opposition to Bodine's Motion to Remand, that each of Bodine's invoices, including the Non-ZLT Invoices, is expressly conditioned on acceptance of Bodine's standard Terms. Thus, Bodine's argument suggests, because Viking accepted the Non-ZLT Invoices, including the Terms, without objection or otherwise rejecting the Terms, the Terms become part of the parties' contract. As fully explained below, Bodine's argument is flawed.

Bodine's additional terms and conditions on the back of its invoices, which were sent to Viking after Bodine filled Viking's purchase order, are dropped from the contract between the

parties under the so called "knock-out" rule.[1] The Court need not look far for controlling authority, as <u>Diamond Fruit Growers, Inc. v. Krack Corp.</u>, 794 F.2d 1440 (9th Cir. 1986) ("<u>Krack</u>"), with facts indistinguishable from the case at bar, is directly on point. <u>Krack</u>, which fully explicates UCC section 2-207[2], was also followed by the Seventh Circuit in <u>Dresser Indus., Inc., Waukesha Engine Div. v. Gradall Co.</u>, 965 F.2d 1442 (7th Cir. 1992) ("When a party sends a written offer that makes acceptance of the agreement subject to its terms, and the offeree responds with a form making its acceptance expressly conditioned on assent to its new or different terms, no contract is formed unless the offeror accepts the offeree's terms. [Citation to <u>Krack</u>]. If, without the offeror's acceptance of the offeree's terms, the parties nevertheless act as if a contract has been formed, the terms of their agreement are determined by § 2-207(3) of the U.C.C...." <u>Gradall</u>, at 1449.)

> Section 2-207 of the UCC provides:
>
> (1) A definite and seasonable expression of acceptance or a written confirmation which is sent within a reasonable time operates as an acceptance even though it states terms additional to or different from those offered or agreed upon, unless acceptance is expressly made conditional on assent to the additional or different terms.
>
> (2) The additional terms are to be construed as proposals for addition to the contract. Between merchants such terms become part of the contract unless:
>
> > (a) the offer expressly limits acceptance to the terms of the offer;
> > (b) they materially alter it; or
> > (c) notification of objection to them has already been given or is given within a reasonable time after notice of them is received.
>
> (3) Conduct by both parties which recognizes the existence of a contract is sufficient to establish a contract for sale although the writings of the parties do not otherwise establish a contract. In such case the terms of the particular contract consist of those terms on which the writings of the parties agree, together with any

---

[1] Moreover, as discussed in Viking's opening brief, Bodine's Additional Terms were a material alteration of the contract, and for that reason as well, should not be considered part of the contract pursuant to UCC § 2-207.
[2] California Commercial Code § 2207 and 810 ILCS 5/2-207 track, verbatim, the language in UCC § 2-207.

2

>supplementary terms incorporated under any other provisions of this Act.

The court's application of section 2-207 in Krack is illuminating to the case at bar as its facts are nearly identical to the facts here. In Krack, the plaintiff manufactured cooling units containing steel tubing supplied by defendant. For ten years the parties had followed the same course of dealing: at the beginning of each year, plaintiff sent defendant a blanket purchase order stating how much tubing plaintiff would need for the year, and later sent release purchase orders when plaintiff wanted the tubing shipped, which is very similar to the practice of the parties in the case at bar in connection with both ZLT and non-ZLT contracts. Defendant would then forward an acknowledgment form and ship the tubing.

Defendant's acknowledgment forms contained a disclaimer of liability to plaintiff for any incidental damages caused by any defect in the tubing, and made its assent expressly conditioned upon plaintiff's assent to the disclaimer. Plaintiff's purchase order did not contain the disclaimer provisions that were in defendant's acknowledgement form and plaintiff never formally assented. At one point, plaintiff's purchasing manager objected to defendant's liability limitations, but defendant did not remove the limitation and both parties continued to do business, just as Bodine continued to ship gear motors to Viking for over four years.

Diamond Fruit Growers, Inc. ("Diamond"), the original plaintiff in Krack, used one of the cooling units and sued plaintiff for damages caused by a leak in tubing manufactured by defendant. Plaintiff filed a third party complaint against defendant and defendant invoked the disclaimer clause in its defense. The trial court denied defendant's motion for a directed verdict. Defendant was found to be 30% responsible. Defendant appealed the court's denial of defendant's motion for judgment n.o.v. The issue before the court was, under the UCC, where the terms of a purchase order and acknowledgment receipt differ and both parties perform, what are the terms of the resulting contract?

>The court explained:
>
>A brief summary of section 2-207 is necessary to an understanding of its application to this case. Section 2-207 changes the common law's mirror-image rule for transactions that fall within article 2 of the U.C.C. At common law, an acceptance that varies the terms of the offer is a counteroffer and operates as a rejection of the original offer. See Idaho Power Co. v. Westinghouse Electric Corp., 596 F.2d 924, 926 (9th Cir. 1979). If the offeror goes ahead with the contract after receiving the counteroffer, his performance is an acceptance of the

terms of the counteroffer. See C. Itoh & Co. v. Jordan International Co., 552 F.2d 1228, 1236 (7th Cir. 1977); J. White & R. Summers, Handbook of the Law Under the Uniform Commercial Code, § 1-2 at 34 (2d ed. 1980).

\*\*\*

Generally, section 2-207(1) "converts a common law counteroffer into an acceptance even though it states additional or different terms." Idaho Power, 596 F.2d at 926; see U.C.C. § 2-207(1). The only requirement under section 2-207(1) is that the responding form contain a definite and seasonable expression of acceptance. The terms of the responding form that correspond to the offer constitute the contract. Under section 2-207(2), the additional terms of the responding form become proposals for additions to the contract. Between merchants the additional terms become part of the contract unless the offer is specifically limited to its terms, the offeror objects to the additional terms, or the additional terms materially alter the terms of the offer. U.C.C. § 2-207(2); see J. White & R. Summers, § 1-2 at 32.

However, section 2-207(1) is subject to a proviso. If a definite and seasonable expression of acceptance expressly conditions acceptance on the offeror's assent to additional or different terms contained therein, the parties' differing forms do not result in a contract unless the offeror assents to the additional terms. See J. White & R. Summers, § 1-2 at 32-33. If the offeror assents, the parties have a contract and the additional terms are a part of that contract. If, however, the offeror does not assent, but the parties proceed with the transaction as if they have a contract, their performance results in formation of a contract. U.C.C. § 2-207(3). In that case, the terms of the contract are those on which the parties' forms agree plus any terms supplied by the U.C.C. Id.; see Boise Cascade Corp. v. Etsco, Ltd., 39 U.C.C. Rep. Serv. (Callaghan) 410, 414 (D. Or. 1984); J. White & R. Summers, § 1-2 at 34.

The court held "that because [plaintiff's] conduct did not indicate unequivocally that plaintiff intended to assent to [defendant's] terms, that conduct did not amount to the assent contemplated by section 2-207(1)." (Krack, at 1445.) The reasoning in Krack applies here because Viking likewise never assented to the additional Terms in Bodine's invoices. Importantly, the terms at issue in Krack and the case at bar is the same. The following statement was printed on back of the acknowledgment form of the defendant in Krack:

> "[defendant's] acceptance of purchaser's offer or its offer to purchaser is hereby expressly made conditional to purchaser's acceptance of the terms and provisions of the acknowledgment form." (Krack, 794 F.2d 1440, 1441)

The foregoing language is similar to language in Bodine's Terms and Conditions of Sale, which is printed on the back of each of Bodine's invoices and states the following:

4

> 16) ACCEPTANCE BY BUYER
> The Company is not bound by any printed matter in the buyer's acceptance forms or purchase orders which impose conditions which vary with the terms herein provided, and buyer's issuance of an order to Company quotations shall be deemed an acceptance of the Terms and Conditions of Sale herein.
>
> These terms and conditions are subject to modification only through mutual agreement in writing of authorized individuals of the buyer and the Company. If these terms and conditions are not acceptable, buyer must notify the Company at once. (A copy of one invoice from Bodine to Viking is attached as Ex. 1 attached to Bodine's Response Brief herein.)

Although the foregoing language in Bodine's Terms and Conditions of Sale is more elaborate, its gist is the same as the above quoted language from Krack: no contract is formed unless Viking accepts Bodine's additional terms.

Just as did the plaintiff in Krack, Viking sent Bodine a purchase order. Just as did the defendant in Krack, Bodine shipped the ordered products to Viking along with an invoice that contained additional Terms in the back, including the venue clause at issue here. Just as did the defendant in Krack, Bodine expressly conditioned its acceptance on Viking's acceptance of Bodine's additional Terms. Just as did the defendant in Krack, Bodine nonetheless performed the contract. Thus, this case is indistinguishable from Krack. As to the requirement of assent by the offeror, the Krack court explained:

> If the offeror does not give specific and unequivocal assent but the parties act as if they have a contract, the provisions of section 2-207(3) apply to fill in the terms of the contract. Application of section 2-207(3) is appropriate in that situation because by going ahead with the transaction without resolving their dispute, both parties are responsible for introducing ambiguity into the contract. Further, in a case such as this one, requiring the seller to assume more liability than it intends is not altogether inappropriate. The seller is most responsible for the ambiguity because it inserts a term in its form that requires assent to additional terms and then does not enforce that requirement. If the seller truly does not want to be bound unless the buyer assents to its terms, it can protect itself by not shipping until it obtains that assent. (Id., at 1445.)

Importantly, the defendant in Krack advanced the same argument that Bodine advances here: "The requirement of assent to Bodine's terms and conditions was imposed expressly and

5

Viking did not object, and thus, Viking is bound by those terms and conditions." (See Bodine's Response to Mot. to Dismiss, 9; Bodine's Reply in Support of Mot. to Remand, 5). The court in Krack was not persuaded, explaining:

> With these general principles in mind, we turn now to Metal-Matic's argument that Krack assented to the disclaimer when it continued to accept and pay for tubing once Metal-Matic indicated that it was willing to sell tubing only if its warranty and liability terms were part of the contract. Metal-Matic's argument is appealing. Sound policy supports permitting a seller to control the terms on which it will sell its products, especially in a case in which the seller has indicated both in writing and orally that those are the only terms on which it is willing to sell the product. Nevertheless, we reject Metal-Matic's argument because we find that these considerations are outweighed by the public policy reflected by Oregon's enactment of the U.C.C.
>
> If we were to accept Metal-Matic's argument, we would reinstate to some extent the common law's last shot rule. To illustrate, assume that the parties in this case had sent the same forms but in the reverse order and that Krack's form contained terms stating that Metal-Matic is liable for all consequential damages and conditioning acceptance on Metal-Matic's assent to Krack's terms. Assume also that Metal-Matic objected to Krack's terms but Krack refused to change them and that the parties continued with their transaction anyway. If we applied Metal-Matic's argument in that case, we would find that Krack's term was part of the contract because Metal-Matic continued to ship tubing to Krack after Krack reaffirmed that it would purchase tubing only if Metal-Matic were fully liable for consequential damages. Thus, the result would turn on which party sent the last form, and would therefore be inconsistent with section 2-207's purpose of doing away with the last shot rule.

Thus, under the authority and reasoning of Krack, Bodine's additional Terms and Conditions of the Sale printed on the back of its invoices should not be binding on Viking.

Date: October 28, 2009                      Respectfully submitted,

 

                                           VIKING ACCESS SYSTEMS, LLC

                                                  s/Christopher S. Naveja
                           By: _____
                                                    One of its Attorneys

Christopher S. Naveja
Arnstein & Lehr LLP
120 South Riverside Plaza, Suite 1200
Chicago, Illinois 60606
Illinois Bar No. 6229936
Telephone: (312) 876-7100
Facsimile: (312) 876-0288
csnaveja@arnstein.com

David V. Jafari
Jafari Law Group, Inc.
801 N. Parkcenter Drive, Suite 220
Santa Ana, California 92705
Telephone: (714) 542-2265
Facsimile: (714) 542-2286
(subject to admission pro hac vice)
California State Bar No. 207881
djafari@jafarilawgroup.com

Karin C. Khan
Jafari Law Group, Inc.
801 N. Parkcenter Drive, Suite 220
Santa Ana, California 92705
Telephone: (714) 542-2265
Facsimile: (714) 542-2286
(subject to admission pro hac vice)
California State Bar No. 247155
kkhan@jafarilawgroup.com

**CERTIFICATE OF SERVICE**

I hereby certify that, on the date below, a true and correct copy of the above and foregoing document has been served via first class mail and/or email to the following counsel of record:

Marcos Reilly
Stephen D. Vernon
HINSHAW & CULBERTSON LLP
222 North LaSalle Street, Suite 300
Chicago, IL 60601-1081
Email: mreilly@hinshawlaw.com
Email: svernon@hinshawlaw.com

Dated: October 28, 2009                  By: __s/Christopher S. Naveja_____
                                                           One of the Attorneys of Record