MHN

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| BODINE ELECTRIC CO., ) <br> ) <br> Plaintiff ) <br> ) <br> v. ) <br> ) <br> ) <br> VIKING ACCESS SYS., LLC, ) <br> ) <br> Defendant. ) <br> ) | No. 09 C 3055 <br><br> The Honorable William J. Hibbler |

## MEMORANDUM OPINION AND ORDER

In this contract dispute, Bodine Electric Company sued Viking Access Systems. Viking Access moves to dismiss, arguing that the Court lacks personal jurisdiction over it. In the event that the Court disagrees, Viking Access asks the Court to transfer Bodine's suit to the Central District of California.[1]

Viking Access manufactures security gate operator machines, and in doing so, use gear motors manufactured by Bodine. In late 2003 Viking Access's Vice President, Steve Taheri, negotiated the purchase of gear motors from Bodine with Chris Miller, an independent agent of Bodine. Taheri and Miller negotiated in Orange County, California, and reached an agreement in 2004 for Bodine to sell gear motors to Viking Access at an agreed upon price. Viking Access would then submit purchase orders to Miller whenever it desired to order gear motors. Viking Access began purchasing gear motors

---

[1] In its Motion, Viking Access asks the Court to transfer the case to the *Southern* District of California, which encompasses Imperial and San Diego County. In its Brief in Support of the Motion, however, Viking Access asks the Court to transfer the case to the *Central* District of California, which encompasses, among other counties, Orange County, where Viking Access is located. Given Viking Access's location, the Court presumes that it made its request to transfer to the Southern District of California in error.

1

from Bodine in 2004. Even though Viking Access submitted its purchase orders to Miller, it received invoices from Bodine. Each invoice requests that Viking Access remit payment to a Bodine office located in Chicago, Illinois. The invoices further identify Bodine's Chicago headquarters and contain both a Chicago phone number and a Chicago fax number. On the reverse side of these invoices, Bodine printed seventeen enumerated terms and conditions, one of which contained a forum-selection clause, identifying Cook County as the venue for any disputes.

In 2007, Miller negotiated with Taheri a series of Zero-Lead-Time (ZLT) Contracts, purportedly to allow Viking Access to "manage the flow of quality Bodine products to [its] production floor." In June 2008, Taheri signed three separate ZLT Contracts. Despite the fact that Miller negotiated the ZLT Contracts with Taheri in California, Bodine issued the ZLT Contracts from its corporate headquarters in Chicago and Miguel Rivera, Bodine's Sales Manager, signed each contract. Each of the ZLT Contracts stated that the blanket purchase order "would be subject to our [Bodine's] standard terms and conditions . . . ."

Throughout the parties' relationship, each invoice sent by Bodine contained seventeen numbered terms on the reverse side of the invoice. The Preamble to these terms read:

> These Terms and Conditions of Sale shall be effective for all merchandise sold by Bodine Electric Company (the "Company") to the entity to whom they have been provided and all affiliates of such entity (collectively, "buyer"). These Terms and Conditions of Sale shall supersede all other agreements, communications and undertakings between the Company and the buy that are inconsistent with the terms hereof. No terms or conditions contained in any purchase order or other document submitted by (or on behalf of) buyer which conflict with or differ from these Terms and Conditions of Sale shall be deemed to have been accepted by the Company unless the same have been specifically accepted in writing by the Company. Any purchase order submitted by the buyer containing different or additional terms shall be deemed to form a contract on all terms other than those which are different from or in addition to the terms of these Terms and Conditions of Sale.

Bodine alleges that Viking Access has failed to pay $175,557.71 for gear motors on past due invoices (including some covered by the ZLT Contracts and some that are not). Bodine argues that the ZLT Contracts incorporated a forum selection clause contained in its Standard Terms and Conditions, which confers personal jurisdiction over Viking Access and makes this forum an appropriate one. It also argues that with regard to purchases not subject to the ZLT Contracts its terms are part of the parties' contract pursuant to Section 2-207 of the UCC. Bodine also argues that even if these terms and conditions are not incorporated into the parties' agreements, that the Court nonetheless has personal jurisdiction over Viking Access and that this is the proper forum.

The Court need not address the issue of whether Viking Access consented to the forum-selection clause found on the reverse side of its invoices because it finds that it does have personal jurisdiction over Viking Access.

Federal Rule of Civil Procedure 12(b)(2) allows non-resident defendants to challenge the Court's assertion of jurisdiction over them. Fed. R. Civ. P. 12(b)(2). Under Rule 12(b)(2) the plaintiff bears the burden of demonstrating the existence of jurisdiction *Purdue Research Foundation v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 782 (7th Cir. 2003). In determining whether to exercise personal jurisdiction, a court may examine affidavits and other evidentiary materials submitted by the parties. *Id.* at 782-83. Bodine does not argue that Viking Access maintains sufficient continuous and systematic contacts in Illinois to make the exercise of general jurisdiction fair, and instead argues that the Court possesses specific jurisdiction over Viking Access based upon the commercial relationship between the parties.

A federal court sitting in diversity has personal jurisdiction only where a court of the state in which it sits would have such jurisdiction. *Citadel Group Ltd. v. Washington Reg'l Med. Ctr.*, 536 F.3d

757, 760 (7th Cir. 2008). The Illinois Long-Arm Statute lists activities which permit Illinois courts to exercise jurisdiction over out-of-state defendants. 735 ILCS 5/2-209(a). The Long-Arm Statute allows Illinois courts to exercise jurisdiction over non-resident defendants that: (1) transact any business within Illinois or (7) make or perform any contract or promise that is substantially connected with Illinois. 735 ILCS 5/2-209(a)(1) &(7). Illinois courts have regularly exercised personal jurisdiction over non-resident corporate purchasers who engage in commercial relationship with Illinois corporations. *See, e.g., Royal Extrusions Ltd. v. Continental Window & Glass Corp.*, 349 Ill. App. 3d 642, 647-48, 812 N.E.2d 554, (Ill. App. Ct. 2004); *Ruprecht Co. v. Sysco Food Serv. of Seattle, Inc.*, 309 Ill. App. 3d 113, 120, 722 N.E.2d 694 (Ill. App. Ct. 1999); *D.S. America (East) Inc. v. Elmendorf Grafica, Inc.*, 274 Ill. App. 3d 643, 645-49, 654 N.E.2d 452 (Ill. App. Ct. 1995); *Autotech Controls Corp. v. K.J. Elec. Corp.*, 256 Ill. App. 3d 721, 724-25, 628 N.E.2d 990 (Ill. App. Ct. 1993); *G.M. Signs, Inc. v. Kirn Signs, Inc.*, 231 Ill. App. 3d 339, 343-44, 596 N.E.2d 212 (Ill. App. Ct. 1992).

In contesting the existence of jurisdiction over it, Viking Access relies heavily on the fact that it negotiated with Miller in only California and even submitted its purchase orders to him. In short, Viking Access argues that it did not transact any of its business with Bodine in Illinois and therefore the Illinois Long Arm statute would not confer jurisdiction over it. Viking Access, however, overlooks much of the relationship it had with Bodine. Viking Access knew that Bodine was an Illinois corporation and that Miller submitted the purchase orders to Bodine. After Miller negotiated the ZLT Contracts, Bodine sent Viking Access a letter from its corporate office in Illinois to memorialize the parties agreement. Further, Viking Access remitted its payments to Bodine in Illinois and not to Miller in California. Finally, Viking Access requested custom-designed gear motors from Bodine and Bodine invested over 500 hours of engineering time in designing the gear motors for Viking Access. In other

words, Viking Access systematically engaged in a five-year relationship with Bodine, an Illinois corporation, in which it negotiated prices and terms and ordered custom-designed gear motors. In choosing to exercise personal jurisdiction over non-resident purchasers, Illinois courts distinguish between "passive purchasers," who merely place orders at a stated price from a catalog or advertisement, and "active purchasers," who negotiate terms or require custom-made products. *See G.M. Signs, Inc.*, 231 Ill. App. Ct. at 343. Even where the bulk of negotiations took place outside of Illinois, Illinois courts have nonetheless found the exercise of personal jurisdiction proper where a commercial buyer deliberately reaches out beyond its home state to avail itself of the benefits with commercial ties with an Illinois corporation. *D.S. America (East) Inc.*, 274 Ill. App. 3d at 645-49. That is what Viking Access has done here, and accordingly the Court finds that jurisdiction is proper under section 2-209(a)(1) of the Long-Arm Statute.

The Court must also consider whether the exercise of jurisdiction under 2-209(a)(1) comports with the requirements of due process. To satisfy federal due process requirements, Viking Access must have sufficient "minimum contacts" with Illinois such that the exercise of jurisdiction does not offend "traditional notions of fair play and substantial justice." *International Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 102 (1945). Courts consider three criteria in determining whether a trial court's exercise of jurisdiction over a non-resident satisfies federal due process standards: (1) whether the non-resident defendant has minimum contacts within the forum state such that he has fair warning that he may be required to defend himself there; (2) whether the action arises out of the defendant's contacts with the forum state; and (3) whether it is reasonable to require the defendant to litigate in the forum state. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 471-77, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985).

5

Here, Viking Access's voluntary transactions with an Illinois corporation more than satisfy this standard. Although contracting with an in-state party by itself is not sufficient to establish minimum contacts, in this case, Viking Access negotiated for the purchase of custom-manufactured gear motors, remitted payment for these motors to Bodine's Illinois headquarters, and engaged in a five-year relationship with Bodine. In other words, Viking Access purposefully availed itself of the benefits of transacting business with an Illinois corporation. *See Autotech Controls Corp.*, 256 Ill. App. 3d at 726. Viking Access's five-year relationship with Bodine gave it fair warning that it might be haled into court in Illinois, Bodine's home state. *See Burger King Corp.*, 471 U.S. at 472-78, 105 S.Ct. 2174, 85 L.Ed.2d 528. The suit arises because Bodine alleges that Viking Access refused to pay for the gear motors that it ordered, satisfying the second requirement. Finally, it is reasonable to require Viking Access to defend suit here: Illinois, its resident corporations, its residents and its workers all have a substantial economic interest in the payment for goods sold and services rendered by its resident. *See Autotech Controls Corp.*, 256 Ill. App. 3d at 726. The exercise of personal jurisdiction over the Defendant also comports with the Illinois due process clause for the same reasons. See *Autotech Controls Corp.*, 256 Ill. App. 3d at 726. Accordingly, the Court finds that the exercise of personal jurisdiction over Viking Access is proper and DENIES its Motion to Dismiss.

Viking Access argues that the Court should transfer the case to the Central District of California pursuant to 28 U.S.C. § 1404(a). District courts may transfer civil actions to another proper forum for the convenience of the parties or witnesses or in the interest of justice. 28 U.S.C. § 1404(a). The moving party has the burden of demonstrating that the "transferee forum is clearly more convenient." *Coffey v. Van Dorn Iron Works*, 796 F.2d 217, 219-220 (7th Cir. 1996). In evaluating motions brought pursuant to Section 1404(a), the Court considers several factors: (1) the plaintiff's choice of forum, (2)

6

the convenience of the parties, (3) the convenience of witnesses, (4) the interests of justice, and (5) the location of the material events giving rise to the case. *Roberts & Schaefer Co. v. Merit Contracting, Inc.*, 99 F.3d 248, 254 (7th Cir.1996) (listing the first four factors); *Continental Cas. Co. v. Staffing Concepts, Inc.*, 2009 WL 3055374, *2-3 (N.D. Ill. Sept.18, 2009).

First, a court affords a plaintiff's choice in forum substantial weight, and should rarely disturb it "'unless the balance is strongly in favor of defendant.'" *In re Nat'l Presto Indus., Inc.*, 347 F.3d 662, 663-64 (7th Cir. 2003) (quoting *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508, 67 S.Ct. 839, 91 L.Ed.1055 (1947)). In this case, Bodine has chosen its home forum and its chosen forum has significant connection to the controversy.

With regard to the second factor, when a plaintiff and a defendant reside in different states there is no choice of forum that will avoid imposing inconvenience. *In re Nat'l Presto Indus., Inc.*, 347 F.3d at 665. Viking Access contends that it "may have to shut down for the entire length of the trial" because its Vice President and engineers might have to testify at trial. Viking Access's claims are grossly exaggerated. First, nothing about this contract dispute suggests that Viking Access's witnesses would be required for each and every day of a trial and thus could attend any trial only on the day in which they were to testify. Second, nothing about this contract dispute suggests that Viking Access would need multiple engineers from its staff to testify. The Court is hard-pressed to imagine a scenario in which such testimony would not be redundant. The Court finds that this factor is neutral with respect to whether the Court should transfer the case.

With regard to the convenience of witnesses, each party has witnesses that would be inconvenienced by litigation in a foreign forum. Bodine's engineers, who designed the gear motors, would be similarly inconvenienced by a trial in California as Viking Access's engineers, who might

testify about reasons for the gear motors' failure, would be inconvenienced by trial in Illinois. Viking Access suggests that Miller, a California resident, is the principal non-party witness who might testify about the negotiations between the parties. However, so far as the Court can ascertain from the Complaint and Viking Access's motion to dismiss, the crux of the dispute between the parties lies not in the negotiation of the contract but instead in the reliability of the gear motors. Viking Access hints that its "California distributors" may also need to testify, but this vague statement gives the Court little ability to assess their importance to any trial. *See Mitkal v. United Parcel Serv. Co.*, No. 09 c 3355, 2009 WL 4674045, at *3 (Dec. 4, 2009) (vague statements regarding potential non-party witnesses insufficient to warrant transfer). Again, the Court finds that the convenience of witnesses weighs neither for nor against transfer.

With regard to the location of material events giving rise to the case and ease of access to sources of proof, the Court finds that these factors lean slightly against transfer. Although Viking Access argues that the contract negotiations took place in California, as noted earlier, the crux of the dispute between the parties lies not in the contract negotiations but in the efficacy of the gear motors. Bodine's design of the gear motors (which Viking Access alleges were defective) took place in Illinois. The Court finds that the design of the gear motors bears a stronger tie to the dispute between the parties than the contract negotiation, and thus the location of material events leans slightly against transfer. Even though the contract was negotiated in California, documents related to the contract negotiations are easily produced, transferable through e-mail and other formats. When documents are easily accessible, access to proof is a neutral factor. *Prokop v. Stonemor Partners, LP*, No. 09 C 4323, 2009 WL 3764103, at *4 (N.D. Ill. Nov. 9, 2009). Other sources of proof—namely allegedly defective gear

motors, unshipped gear motors, and engineering specifications— are located in California, Iowa, and Illinois. This factor is neutral, at best.

Finally, the interests of justice weigh against transfer. The parties point out that the average time to resolution and to trial varies only slightly between this District and the Central District of California. More importantly, however, there remains the possibility that Illinois law will govern the dispute. Although Viking Access suggests that the UCC governs the breach of contract dispute, the Court has yet to rule on the applicability of the choice-of-law provision in Bodine's Terms and Conditions. If the Court rules that these Terms and Conditions are part of the contract between the parties, then Illinois law will apply. Further, the Court has yet to rule on whether the forum-selection clause is part of the parties' contract. Should the Court transfer the case to the Central District of California, Bodine likely would force the Court to rule on the issue, potentially necessitating a transfer back to this District. The Court thus find that the interests of justice suggest that this is the more appropriate forum.

In sum, most of the factors are decidedly neutral. Viking Access has failed to demonstrate that the factors so clearly weigh in favor of transfer that the Court should disturb Bodine's choice in forum. Accordingly, the Court DENIES Viking Access's Motion to Transfer.

IT IS SO ORDERED.

12/17/09
Dated

Hon. William J. Hibbler
U.S. District Court